THE STATE, EX REL. BARRETT, *v.* INDUSTRIAL COMMISSION
OF OHIO ET AL.*

(No. 6638—Decided July 24, 1962.)

*Messrs. Hoover, Beall & Eichel,* for relator.
*Mr. Mark McElroy,* attorney general, *Mr. Alvin C. Vinopal*
and *Mrs. Mary Spivey Durham,* for respondent Industrial Commission.
*Messrs. Squire, Sanders & Dempsey,* for respondent General Electric Company.

DUFFEY, P. J.   Relator filed an original action in mandamus to require the Industrial Commission to grant an addi-

*Judgment affirmed, 175 Ohio St., 255.

tional award for violation of a specific safety requirement. The employer, General Electric Company, has been permitted to intervene as a party respondent.

The commission awarded claimant ordinary compensation but denied any further award based on safety requirements. Claimant was a punch press operator. The press operated on a wheel to which was attached a ram. As the wheel rotated the ram descended, and then, completing a cycle, would rise again. When the ram reached its highest point, a wedge was forced into a slot in the wheel and prevented a repeat of the cycle. The machine had a two-hand tripping device. A "dog spring" is that portion of the device which forces the wedge into the slot. On the occasion involved here the claimant had punched a piece of material, and as the ram started to rise, he reached into the press area to remove the material. The wheel revolved, the "dog spring" broke, the wedge failed to engage the wheel, and the press repeated its cycle without interruption and caused claimant's injury.

Section 47, Bulletin No. 203, state of Ohio, provides in part as follows:

"Section 47. Power Presses and Drop Hammers—Guarding.

"a. Guarding: Where enclosure of ram, gate or fixed barrier type guards are used, there shall be no openings in the guard which will permit the insertion of a five-eighths (⅝) inch ball if within three (3) inches of any moving point. If farther away than three (3) inches, opening shall not permit the insertion of a one and one-half (1½) inch ball.

"Except where the operator uses both hands out of the danger zone to hold the stock while the operation is performed, every press in use shall be so constructed or provided with effective safety devices so that the hands or fingers of the operator are prevented from entering the danger zone at the time of operation.

"The following methods of guarding are acceptable:

"1. Manual feed presses, by:
    "* * *

    "(e) Pull guard or two-hand tripping devices (Secs. 52 and 54).
"* * * *"

The device here follows an "acceptable" method of guarding. No attack has been made on its design or quality. On the facts there is no ground to find and no claim is made that maintenance and inspection have any relationship to the cause of the injury. The spring here broke the moment before the injury and there is nothing of record to suggest that this particular break could reasonably have been anticipated.

Thus narrowed down, the relator's contention is that an "effective" safety device is one which absolutely prevents the particular injury. Stated another way, relator's contention apparently is that the employer is required to install equipment which will absolutely prevent the injury, and the fact of an injury from the cause to be prevented is proof that the device was not "effective."

Obviously, the device here was not effective to prevent the injury here in this instance. It does not follow that this is proof that it was not an "effective" device. Any device will, under extreme enough conditions, fail. Relator's interpretation of the bulletin is to require that a particular injury be prevented. This interpretation results in the *imposition of liability* for a result rather than a requirement that an employer engage in specific conduct. Cf. *State, ex rel. Holdosh, v. Industrial Commission* (1948), 149 Ohio St., 179. Whether or not the commission could adopt such a rule, we do not believe that Section 47 can be so interpreted. In our opinion, the section requires a defined act to be done, and if that act is done according to the standards established the employer has fully complied, and there can be no liability regardless of the fact of an injury of the type intended to be prevented.

It will be noted that Section 47a. (1) lists "acceptable" methods of "guarding." In Section 2g. "guarded" is defined as so protected that accidental contact with the point of danger is "reasonably remote." The definition of "securely fastened" is also of interest. This is defined as "so secured in place that it cannot, under normal reasonably foreseen conditions or circumstances, be accidentally or unintentionally displaced," (Section 2j.).

Attention is also directed to the meaning of the word "substantial." Section 2k. provides:

"Substantial when used herein shall mean construction of

such strength, of such materials, and of such workmanship that the object will withstand all reasonable, expected wear, usage or shock to which it may be subjected.''

(Under Section 47a. 1[a] another ''acceptable'' method of guarding is ''enclosure of ram.'' This, in turn, is defined in Section 48 as an enclosure which is ''substantially'' constructed.)

The basic section of the bulletin provides:

''Section 1. Scope

''The purpose of this code is to provide *reasonable* safety for life, limb and health of employees. In cases of practical difficulty or unnecessary hardship, the Industrial Commission of Ohio may grant exceptions from the literal requirements of this code, or permit the use of other devices or methods when it is clearly evident the *equivalent protection* is thereby secured.'' (Emphasis added.)

An ''acceptable'' method of design for an ''effective'' device is any method listed in Section 47a. (1). There is no claim that the device itself was not ''substantial.'' Nor is there any claim that it was improperly maintained. Nor is there any claim that the point of danger was not ''guarded.'' We, therefore, conclude that on the record here the commission could find that the employer had installed an ''effective'' device and fully complied with the specific requirement. This conclusion is supported in principle by *Swift & Co.* v. *See* (1928), 30 Ohio App., 127.

The writ of mandamus will be denied.

*Writ denied.*

Duffy and Bryant, JJ., concur.